UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Velcro Industries, B.V.
and Velcro USA, Inc.

     v.                             Civil No. 04-cv-242-JD
                                        Opinion No. 2005 DNH 138

Taiwan Paiho Limited


O R D E R

The defendant, Taiwan Paiho Limited, has filed two motions for partial summary judgment on the plaintiffs' patent infringement claims.  The plaintiffs, Velcro Industries, B.V. and Velcro USA, Inc. (collectively, "Velcro") object to each motion and have also filed a motion to strike Paiho's reply to one of the objections in its entirety and the reply to the other objection in part.[1]  Paiho objects to the motion to strike.

In addition, Velcro has moved to compel the Rule 34 inspection of a facility operated by third-party Creative Machine Designs, Inc., pursuant to a subpoena issued by Velcro's counsel. Creative objects to this motion and cross-moves to quash the subpoena.  Velcro objects to the motion to quash, and Creative has filed a reply to Velcro's objection.

Separately, Andrew Morse, an engineer who works for Creative, has moved to quash a subpoena to appear for deposition

---

[1]In the alternative, Velcro has moved for leave to file a sur-reply, to which Paiho does not object.

and to produce documents, also issued by Velcro's counsel, or in the alternative, for a protective order.  Velcro also objects to this motion.  Finally, Paiho has moved to compel Velcro to produce certain documents.  Velcro objects.

I.    The Motions for Partial Summary Judgment

A.    Background

Velcro alleges that Paiho has infringed Velcro's patents for a method of continuously producing a multi-hook fastener member and the member itself, United States Patent Nos. 4,794,028 and 4,872,243.  Although Paiho seeks summary judgment on claims 5 and 8 through 11 of the '028 patent, and on claims 1 through 3 of the '243 patent, Velcro has indicated in response that it does not assert infringement of any of these claims but one,[2] claim 1 of the '243 patent.  Opp'n First Mot. Part. Summ. J. at 3.  As Paiho notes in its reply briefs, its motions for summary judgment are

_____

[2] Velcro nevertheless states that "it must respond to Paiho's assertion and thus contends that Paiho's molded hook fastener products, and process for manufacturing molded hook fasteners, infringe these claims, even though it has chosen not to assert these claims in this litigation."  Opp'n First Mot. Part. Summ. J. at 3.  If Velcro means to broaden its infringement theory in response to the motions for summary judgment, it cannot do so. See Evans v. Taco Bell Corp., 2005 DNH 132, 2005 WL 2333841, at *11 (D.N.H. Sept. 23, 2005); accord On-Line Tech., Inc. v. Bodenseewerk Perkin-Elmer GmbH, 386 F.3d 1133, 1146 (Fed. Cir. 2004).  The court has therefore not considered claims 5 or 8 through 11 of the '028 patent or claims 2 or 3 of the '243 patent in ruling on the motions for summary judgment.

therefore moot except as to claim 1 of the '243 patent.  Reply
Opp'n First Mot. Part. Summ. J. at 1, n.1; Reply Opp'n Second
Mot. Part. Summ. J. at 1, n.1.

The inventions at issue in this case comprise a method of
continuously producing a multi-hook fastener member and the
member itself.  As set forth in the "Background" section to the
'243 patent, "[s]trip-like fastener members having a great
multiplicity of closely-spaced upstanding hook-like projections"
are used in conjunction with strips of interfacing loops to
provide an effective means of joining elements that will be
repeatedly separated and reunited, such as the lapels of a coat.
'243 patent, col. 1, lines 18-37.  The patent claims, <u>inter alia</u>,

> An elongate member, comprising: a base portion, and a
> great multiplicity of resiliently flexible hook-like
> projections extending generally toward said base
> portion, <u>with at least some adjacent ones of said
> projections, in a direction along the length of said
> member, extending in generally opposite directions</u>;
> said base portion and integral projections being formed
> from an extrusion of molten plastic material by
> providing a first, cooled forming roller having a
> plurality of hook-forming cavities . . . ; <u>providing a
> second pressure roller in position for coaction with
> said first forming roller</u>; concurrently rotating said
> first and second rollers in opposite directions . . . ;
> directing said extrusion in between said first and
> second rollers at an interface thereof so that said
> plastic material fills said hook-forming cavities to
> form said base portion of said strip-like fastener
> member and with said hook-like projections extending
> integrally from one surface of the base portion, each
> said hook-like projection having a free end portion;
> cooling said fastener member . . . by carrying it on
> the periphery of said rotating cooled forming roller
> through a substantial portion of a revolution of said
> forming roller; and removing said strip-like fastener

> member from the first forming roller . . . so that said
> hook-like projections are withdrawn from said hook-
> forming cavities, after being sufficiently cooled so
> that unacceptable deformation of the hook-like
> projections is avoided . . . .

Id., col. 10, lines 9-35 [claim 1] (emphases added).

Paiho manufactures molded plastic hook fasteners under the name "Easy Tape."  First Rocha Decl. ¶ 4, Exs. AA, BB.  One of these products consists of rows of hooks extending along the length of the product where the hooks in one row all face in one direction and the hooks in each row beside it all face in the opposite direction.  Id. ¶ 8; see also id. ¶ 4, Ex. AA.  Another product consists of "double hooks," i.e., "hooks that contain two hook-like projections from each stem."  Id. ¶ 6; see also id. ¶ 4, Ex. BB.  Paiho has never produced plastic hook fasteners of any other design.  Id. ¶¶ 8-9.

To manufacture these products, Paiho uses an extruder to supply melted plastic to a forming roller containing hook molds.  Second Rocha Aff. ¶¶ 7, 11, 13.  The process does not include a second cooling roller.  Id. ¶ 9-10, 14-15.  Instead, the plastic cools while the forming roller, which is itself cooled, rotates, carrying the plastic along its periphery.  Id. ¶¶ 7, 13.  A cold air manifold is placed near the roller to further aid in cooling.  Id.  Although the product features unacceptable deformation as it is separated from the forming roller, it subsequently passes between a "post-forming" roller, and what appears to be a second

parallel roller, to correct these defects.  Id. ¶¶ 6-7, Ex. A; ¶¶
12-13, Ex. B.

B.   Discussion

        In support of its first motion for summary judgment, Paiho
argues that its fasteners do not infringe claim 1 of the '243
patent either literally or under the doctrine of equivalents
because the claim covers only fasteners "formed from molds that
have hook cavities along the length of the member extending in
generally opposite directions," while Paiho's fasteners "have
hooks in the same direction."  Mem. Supp. First Mot. Part. Summ.
J. at [2].  Velcro objects on the grounds that, first, this
argument rests on a construction of claim 1 which is improper
given the parties' prior agreement that all claim terms other
than those construed in the court's Markman order should be given
their "ordinary meaning," id. at [5], and in any event is legally
incorrect.  Second, Velcro argues that Paiho has failed to show
as a matter of law that all of its fasteners do not infringe
claim 1 of the '243 patent, either literally or under the
doctrine of equivalents, even when the claim is given Paiho's
proffered construction.

        "An infringement analysis proceeds first to claim
construction to determine the scope and meaning of the asserted
claims, and second to a comparison of the properly construed

claims with the allegedly infringing product to determine whether the product embodies every limitation of the claims." Biagro W. Sales, Inc. v. Grow More, Inc., ___F.3d ___, 2005 WL 2207685, at *3 (Fed. Cir. Sept. 13, 2005) (citing Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc)); accord Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995), aff'd, 517 U.S. 370 (1996).  Infringement ordinarily presents a question of fact.  E.g., Nazomi Comms., Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1367 (Fed. Cir. 2005); Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1320 (Fed. Cir. 2003). Nevertheless, a court can resolve infringement on summary judgment when no genuine issue of material fact exists as to whether every limitation recited in the properly construed claim is present in the accused device, either literally or under the doctrine of equivalents.  PC Connector Solutions LLC v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005); Goldenberg v. Cytogen, Inc., 373 F.3d 1158, 1163-64 (Fed. Cir. 2004).

Of course, the court has already construed what the parties identified as the disputed claim terms in this matter in its order of March 31, 2005.  This order, issued with the benefit of extensive briefing and oral argument, construed only the terms "extrusion" and "means for providing pressure" as they appear in the claims-in-suit because the parties had agreed beforehand that none of the other terms from those claims was disputed.  Velcro

6

Cl. Constr. Br. at 2; Paiho Cl. Constr. Br. at 1.  Indeed,
pursuant to a Rule 26(f) scheduling order jointly submitted by
the parties and approved by the court, Velcro and Paiho were to
exchange lists of disputed claim terms, followed by proposed
constructions of those terms, prior to submitting their claim
construction briefs.

Despite the considerable efforts of counsel and the court to
effect the construction of what both sides said were the only
disputed terms in this matter at an early stage of the
litigation, the summary judgment briefing reveals that the
parties also disagree over the proper construction of "adjacent"
as it appears in claim 1 of the '243 patent.  Such an oversight
is difficult to understand in a case involving sophisticated
parties, counsel experienced in patent litigation, and several
experts whose services included giving opinions on claim
construction.  Both sides have previously represented to the
court that no claims other than "extrusion" and "means for
providing pressure" were in dispute.  Diligence in developing a
litigation position at the appropriate point in time should have
made the parties aware of all the claims that are in dispute.[3]

---

[3]While it is possible that some fact unearthed in discovery,
which did not close until August 21, 2005, gave rise to the
dispute over the meaning of "adjacent," that seems unlikely,
since both sides should have known the configuration of Paiho's
fasteners well in advance of the <u>Markman</u> hearing, if not in
advance of the commencement of this lawsuit.  In any event,

The court must therefore decide what effect, if any, the parties' careless representations as to the absence of a dispute over the construction of "adjacent" should have on the summary judgment analysis.

In refusing to entertain a proposed claim construction on appeal which was not presented below, the Federal Circuit has cautioned that a party's claim construction argument "should not be a moving target." Finnigan Corp. v. Int'l Trade Comm'n, 180 F.3d 1354, 1363 (Fed. Cir. 1999). Accordingly, "in the context of claim construction, a waiver may occur if a party raises a new issue on appeal, as by, e.g., presenting a new question of claim scope." CSS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1371 (Fed. Cir. 2002). The court in CSS Fitness held that whether a party has waived its right to assert a particular claim construction depends on "whether the trial court and the party claiming waiver had fair notice and an opportunity to address the issue concerning the scope of a claim limitation." Id.

Although the Federal Circuit does not appear to have directly addressed how a party might become precluded from raising new claim construction arguments before the district court, dicta in Tegal Corp. v. Tokyo Electron Am., Inc., 257 F.3d 1331 (Fed. Cir. 2001), suggests a similar approach to the one the

---

neither party has offered any explanation as to how they managed to overlook the existence of the dispute as to "adjacent."

circuit has used on appeal.  In <u>Tegal</u>, the defendant to an
infringement suit appealed the district court's construction of a
claim term, following a bench trial, which it had not identified
as disputed in its <u>Markman</u> brief, during discovery, or even in
its pre-trial materials.  <u>Id.</u> at 1344.  While the plaintiff
contended that the defendant had therefore waived any argument as
to the term's construction, the court did not reach this
contention because the plaintiff itself had failed to preserve
that issue for appeal.  <u>Id.</u>  In so holding, the court noted that
the plaintiff "should have prevailed upon the district court to
exclude [the defendant's] evidence of what [the term] meant" on
the ground that the defendant "had waited too late" to raise a
dispute over the meaning of the term.  <u>Id.</u>

Based on these Federal Circuit cases, the court concludes
that a party can waive its right to argue its construction of a
particular claim term before the district court through conduct
which deprives its adversary, or the court, of a fair opportunity
to address that argument.  <u>Compare</u> <u>Leggett & Platt Inc. v.
Hickory Springs Mfg. Co.</u>, 2000 WL 1269363, at *6 (N.D. Ill. 2000)
(refusing to construe terms not identified as disputed in
defendant's brief submitted before <u>Markman</u> hearing, but raised in
post-hearing briefs, where defendant "had ample opportunity to
alert both the Court and [the plaintiff] of their changed
position that they sought construction of additional terms but

did not do so," thereby prejudicing plaintiff), <u>aff'd</u>, 285 F.3d
1353 (Fed. Cir. 2002), <u>with</u> <u>Advanced Cardiovascular Sys., Inc. v.</u>
<u>Scimed Life Sys., Inc.</u>, 2000 WL 682890, at *1 (S.D. Ind. Feb. 9,
2000) (considering merits of motion for supplemental claim
construction, and reconsideration of claim construction order,
filed approximately one month after order issued), <u>rev'd on other</u>
<u>grounds</u>, 261 F.3d 1329 (Fed. Cir. 2001).  Here, both Velcro and
Paiho have engaged in such conduct by telling the court, and each
other, that neither disputed any terms from the claims at issue
save "extrusion" and "means for providing pressure."

Nevertheless, the court cannot analyze Velcro's infringement
claims, or Paiho's counterclaim for a declaratory judgment of
non-infringement, without arriving at a proper construction of
the terms from the patents-in-suit.  <u>Markman</u>, 52 F.3d 976.
Because the parties address the construction of the term
"adjacent" in their summary judgment briefing, the court will
construe that term now.  To do so, as noted in the claim
construction order in this matter, the court must give the terms
the "full breadth of the ordinary and customary meanings
attributed to them by those of ordinary skill in the art."  2005
DNH 35, 2005 WL 483400, at *1 (D.N.H. Mar. 2, 2005) (internal
quotation marks omitted).  Neither party, however, may argue for
a narrower or broader construction of the claims at issue because
they have waived their right to do so.  <u>See</u> <u>TM Patents, L.P. v.</u>

<u>Int'l Bus. Machs. Corp.</u>, 121 F. Supp. 2d 349, 378 (S.D.N.Y. 2000) (reading "nothing into" claim term which parties did not identify as disputed in connection with <u>Markman</u> hearing); <u>see also</u> <u>Mars, Inc. v. H.J. Heinz Co.</u>, No. 01-cv-10961, slip op. at 5 & n.4 (C.D. Cal. July 21, 2003) (construing claim term based on "common usage" in ruling on summary judgment where construction not disputed in connection with <u>Markman</u> hearing), <u>rev'd on other grounds</u>, 377 F.3d 1369 (Fed. Cir. 2004); <u>cf.</u> <u>CSS Fitness</u>, 288 F.3d at 1371.

Velcro, in fact, argues that "Paiho is judicially estopped from contending that these claim elements should receive anything more than their ordinary meaning." Opp'n First Mot. Part. Summ. J. at 9. More precisely, Velcro complains that Paiho has proffered a construction of "adjacent" which gives the term <u>less</u> than its ordinary meaning by "limit[ing] the claim[] to cover only hook-like projections <u>in the same row</u> that face in opposite directions . . . ." <u>Id.</u> Velcro argues that Paiho derives the "same row" requirement not from the language of claim 1 itself, but from the specification, which cannot be used to read limitations into the claims. <u>See</u> 2005 DNH 35, 2005 WL 483400, at *1 (citing cases). As its alternative construction, Velcro says that "the term 'adjacent' is not limited to hooks in the same row; an adjacent hook may be a hook in the same row, or a hook in

11

the row next to it."  Opp'n First Mot. Part. Summ. J. at 5.

The court disagrees with Velcro's characterization of Paiho's argument.  As Paiho points out, Mem. Supp. First Mot. Part. Summ. J. at [2], claim 1 of the '243 patent requires "at least some adjacent ones of [the hook-like] projections, in a direction along the length of [the elongate] member, extending in generally opposite directions."  The prepositional phrase "in a direction along the length of said member" modifies the antecedent noun phrase "some adjacent ones of said projections," limiting the adjacent projections in that respect.  The claim therefore describes projections <u>which are adjacent along the length of the member</u> extending in generally opposite directions. The language of the claim itself, which provides the starting point for the court's claim construction analysis, 2005 DNH 35, 2005 WL 483400, at *1, supports this construction.

Velcro's proposed construction, in contrast, reads the phrase "in a direction along the length of said member" out of the claim entirely.  In construing patent terms, the court "must give meaning to all the words in [the] claims."  <u>Exxon Chem. Patents, Inc. v. Lubrizol Corp.</u>, 64 F.3d 1553, 1557 (Fed. Cir. 1995); <u>see also</u>, <u>e.g.</u>, <u>Merck & Co. v. Teva Pharms. USA, Inc.</u>, 395 F.3d 1364, 1372 (Fed. Cir. 2005).  Velcro does not explain how the language at issue could be read to embrace projections which

12

are adjacent along the breadth of the member, rather than its
length, given that length is the dimension specified.[4]  In any
event, because Velcro agreed that there was no dispute as to the
meaning of "adjacent," they cannot now argue for a broadening
construction of that term.  See CSS Fitness, 288 F.3d at 1371.

Having determined that the meaning of "adjacent" is clear
from the language of the claim, the court must proceed to
consider the remainder of the intrinsic evidence for the sole
purpose of determining whether it specifies a deviation from that
language.  2005 DNH 35, 2005 WL 483400, at *1.  Normally, aside
from the claim itself, the intrinsic evidence constitutes the
specification and any prosecution history submitted by the
parties, including any prior art cited in the patent examiner's
file.  Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582–
83 (Fed. Cir. 1996).  In the court's view, however, Paiho's
representation that "adjacent" was not in dispute has cost it the
right to offer any of the prosecution history or its prior art
references in support of its proposed construction.  Cf. Leggett
& Platt, 2000 WL 1269363, at *6.  The court agrees with Velcro

---

[4]Instead, Velcro argues that "the ordinary meaning of the
term 'adjacent' is not limited in direction."  Opp'n First Mot.
Part. Summ. J. at 11.  While this statement is true, it is also
irrelevant, because the phrase "in a direction along the length
of said member" itself clearly limits the direction in which the
projections must be adjacent.

that it would suffer prejudice if Paiho could use these materials as a basis for claim construction at this point.  The court has therefore not considered the prosecution history or prior art Paiho cites in support of its first motion for summary judgment in arriving at its construction of "adjacent."

In construing a patent claim, however, a court must always consider the specification.  E.g., Vitrionics, 90 F.3d at 1582. Here, the specification, in relevant part, supports the court's construction of claim 1 of the '243 patent to require projections which are adjacent along the length of the elongate member to extend in generally opposite directions.  See '243 patent, col. 5, lines 16-19 ("adjacent ones of the hook projections face in generally opposite directions in a direction along the length of the fastener member"); col. 7, lines 26-28 ("adjacent ones of the cavities, in a direction circumferentially of the roller, extend or face in opposite directions"); accord id., fig. 2 & col. 4, lines 16-20 (showing cross-section of forming roller with adjacent hook-shaped cavities facing opposite directions along circumference).  The court therefore concludes that the meaning of the phrase "adjacent ones of [the hook-like] projections, in a direction along the length of [the elongate] member, extending in generally opposite directions" is clear from the intrinsic evidence and requires that the projections which are adjacent

along the length of the member (as opposed to adjacent along its
breadth) and which extend in generally opposite directions.  The
court will use this construction in evaluating Paiho's motions
for partial summary judgment.

It is also apparent from the parties' briefing on the
partial summary judgment motions that a dispute exists as to the
meaning of at least one other term in claim 1 of the '243 patent.
Paiho argues that its double hook fasteners do not infringe
because "[b]y their nature double hooks in a direction along the
length of the product all extend in the same direction."  Rocha
Decl. ¶ 7.  Velcro, however, rejoins that those fasteners do
infringe because "adjacent hook-like projections face in
generally opposite directions."  Opp'n First Mot. Part. Summ. J.
at 12.  Resolving this dispute depends on the proper construction
of "projections" in the phrase "adjacent ones of said
projections, in a direction along the length of said member,
extending in generally opposite directions."  If the term
"projections" means only what Velcro calls the "stem" portion,
id. at 5, then Paiho would appear to be correct that the
projections on its double hook fasteners all extend in the same
direction.  If, however, "projections" means the hooks
themselves, then Paiho's double hook fasteners appear to feature
projections, i.e., the hooks on each "stem," extending in

15

generally opposite directions.

Before the court can resolve the issue of infringement, though, it must arrive at a proper construction of the term "projections." E.g., Markman, 52 F.3d 976. Unlike the term "adjacent," the parties' summary judgment briefing offers no arguments as to the construction of "adjacent." Each side shall therefore submit a memorandum of law, not to exceed fifteen pages, setting forth its construction of the term "projections" as it appears in claim 1 of the '243 patent, by October 14, 2005. Each side may then file a response, not to exceed five pages, to the other's claim construction brief by October 24, 2005, if it chooses to do so. These materials shall be limited to the proper construction of the term "projections" and shall not include any arguments as to infringement or other issues.

The court will consider the parties' claim construction arguments in light of the principles of waiver discussed supra. After construing the term "projections," the court will proceed to analyze the motions for partial summary judgment according to that construction. Until then, the court cannot take any action on Paiho's motions for partial summary judgment. See Insight Tech. Inc. v. SureFire, LLC, No. 04-cv-74, slip op. at 2-3 (D.N.H. June 14, 2005); Centricut, LLC v. Esab Group, Inc., 2001 DNH 70, 2001 WL 532498, at *2-*3 (D.N.H. Apr. 3, 2001). The

court also takes no action on Velcro's related motion to strike
or to file a sur-reply at this time.


II.   <u>The Discovery Motions</u>

A.   <u>Velcro's Motion to Compel the Inspection of Creative and
     Creative's Cross-Motion to Quash the Inspection Subpoena</u>

     Velcro has moved to compel "the videotaped and photographed
inspection of the business premises and facilities" of Creative,
a third-party corporation located in Manchester, New Hampshire,
which designs and builds manufacturing equipment.  Mot. Compel
Insp. at 1.  On March 7, 2005, counsel for Velcro caused a
subpoena to issue to Creative seeking to inspect its premises and
also sent a notice to Paiho's counsel of record informing them of
the inspection.  The subpoena was served in hand to Morse that
same day.  There does not appear to be any dispute that Morse is
not an officer or managing or general agent of Creative, nor is
he otherwise authorized to accept service on its behalf.

     Counsel for Paiho identified themselves to their
counterparts as counsel for Creative with respect to the subpoena
in an e-mail of March 10, 2005.  In this message, counsel for
Paiho noted that "Creative is willing to work with you to
accommodate an inspection, but we need to come to some
understanding as to the scope of the inspection."  Smith Decl.

17

Supp. Mot. Compel Insp. ¶ 5, Ex. C.  Counsel for Paiho later
conveyed Creative's willingness to allow an inspection of certain
machines being assembled there, but noted that the company would
not permit the taking of photographs or video due to concerns
about the confidentiality of its work for customers other than
Paiho.  Velcro's attorney responded that these "limitations . . .
are unacceptable" and threatened to "seek the Court's assistance
in compelling an appropriate inspection" should Creative not
agree to "an unrestricted inspection."  Id. ¶ 8, Ex. F.  That
same day, counsel for Velcro also forwarded his counterpart
another "Notice of Inspection" in an effort to delineate the
scope of the sought-after discovery.

Velcro then filed its motion to compel on April 5, 2005.
Creative, now acting through independent counsel, wrote to
counsel for Velcro two days later noting Creative's objection "to
the inspection and to the original subpoena and notice for the
reasons stated in the correspondence from its prior counsel."
Rocha Aff. Obj. Mot. Compel Insp. ¶ 14, Ex. B.  Creative's new
counsel also noted its objection to the more recent notice of
inspection on a number of grounds, including that service of the
subpoena appeared to be invalid.  Creative's objection to
Velcro's motion to compel and a cross-motion to quash the
subpoena and notice followed.

18

Creative objects to the motion to compel and moves to quash on the grounds that, first, the requested inspection is unnecessary and burdensome and, second, the subpoena was improperly served.  In its objection to the motion to quash, Velcro disagrees with these contentions and adds that, as it suggested in its motion to compel, Creative has waived any objections to the subpoena, whether on the basis of defective service or otherwise.  The court must therefore first address whether service on Creative was properly effected.

Fed. R. Civ. P. 45(b)(1) provides that "service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person . . . ."  Where, as here, the person in question is a corporation, some courts have determined the sufficiency of service according to the law of the forum state by analogy to the relevant provisions of Fed. R. Civ. P. 4, which governs service of process.  See Ultradent Prods., Inc. v. Hayman, 2002 WL 31119425, at *3 & n.4 (S.D.N.Y. Sept. 24, 2002); Khachikian v. BASF Corp., 1994 WL 86702, at *1 (N.D.N.Y. Mar. 4, 1994); In re Pappas, 214 B.R. 84, 85 (Bkrtcy. D. Conn. 1997). Other authorities have simply stated, without reference to Rule 4, that a subpoena may be served upon one of the corporation's officers or managing or general agents.  See Liberty Mut. Fire Ins. Co. v. Ravannack, 2002 WL 1770936, at *3 (E.D. La. Aug. 1,

2002); <u>Ghandi v. Police Dep't</u>, 74 F.R.D. 115, 121 (E.D. Mich.
1977); 9A Charles Alan Wright & Arthur R. Miller, <u>Federal</u>
<u>Practice & Procedure</u> § 2454 (2d ed. 1977 & 2005 supp.); <u>Discovery</u>
<u>Proceedings in Federal Court</u> § 10:2 (3d ed. 1995 & 2005 supp.);
<u>cf.</u> Fed. R. Civ. P. 4(h)(1).

New Hampshire law provides for service on a corporation
either by service upon its registered agent, or, if the agent
cannot be served through reasonable diligence, by certified mail
addressed to the secretary of the corporation at its principal
office.  N.H. Rev. Stat. Ann. § 293-A:5.04.  The subpoena issued
to Creative was not served through either of these means.  Nor
was it served through the other method prescribed by Fed. R. Civ.
P. 4(h)(1), <u>i.e.</u>, upon an officer, a managing or general agent,
or to any other agent authorized to receive service on the
corporation's behalf.  Morse occupies none of these positions.
Delivering the subpoena to him therefore did not properly
accomplish service on Creative according to any accepted
interpretation of Rule 45(b)(1).

Velcro does not furnish any authority interpreting the rule
to authorize service of a subpoena upon a corporation through
delivery to one of its employees.  Instead, Velcro cites a raft
of cases for the proposition that "nothing in Rule 45 requires
personal service of a subpoena."  Opp'n Mot. to Quash Insp.

20

Subpoena at 12.  As Creative points out, however, it has not
questioned the manner in which the subpoena was served upon
Morse, but Morse's authority to accept the subpoena on behalf of
Creative.  The cases on which Velcro relies do not address this
issue and are therefore inapposite.[5]  For that matter, they do
not support Velcro's considerably broader view that Rule 45's
only requirement for service is that it "'reasonably apprise[]'"
the witness of the subpoena "or otherwise 'reasonably insure
[its] actual receipt.'"  Opp'n Mot. to Quash Insp. Subpoena at
13.  Even if this were the law, however, the court disagrees with
Velcro's assertion that simply handing a subpoena to an employee
with no managerial responsibilities or authority to accept
service "reasonably insures" anything of the sort.

Velcro also argues that Creative has "waived any objection
to service by accepting the subpoena, agreeing to allow an
inspection, and otherwise communicating about the inspection."
Id. at 12.  Although counsel for Creative acknowledged that the

_____

[5]Indeed, of Velcro's authorities, only one even deals with
service of a subpoena in a civil action on a corporation.  See
Ultradent, 2002 WL 31119425, at *2-*3.  There, however, service
was made on the secretary of state as the corporation's agent for
service for process in accordance with New York law.  Id.  The
court simply ruled that service on the secretary by certified
mail, rather than personal service, was sufficient to satisfy
Rule 45.  Id. at *3-*4.  Because Creative was not served in
accordance with New Hampshire law, Ultradent provides no support
for Velcro's position.

subpoena had been received, he never said that service had been properly effected or indicated his client's waiver of valid service.  Instead, the attorney stated that Creative would accommodate the inspection if agreement as to its scope could be reached, then communicated Creative's offer to allow the inspection so long as Velcro did not take photographs or video. Counsel for Velcro, however, rejected this offer, then filed the motion to compel.  The next communication between the parties about the subpoena consisted of the letter to Velcro's attorneys from Creative's new counsel, which, inter alia, questioned whether the subpoena had been properly served.

In the court's view, Creative did not waive its right to object to proper service of the subpoena through its attorney's communications with counsel for Velcro.  See Movitz v. First Nat'l Bank of Chicago, 1997 U.S. Dist. LEXIS 2543, at *7 (N.D. Ill. Feb. 28, 1997) (ruling that third-party witness did not waive Rule 45(b)(2) requirements by promising to appear without subpoena).  Indeed, contrary to Velcro's characterizations, counsel for Creative neither "accept[ed] the subpoena" nor "agree[d] to allow an inspection."  He merely offered to permit an inspection on terms that Velcro rejected.  Finally, to the extent Velcro argues that Creative waived its objection to proper service because it did not raise it in writing within fourteen

days after service of the subpoena under Rule 45(c)(2)(B), that
argument contains the seeds of its own destruction, since service
within the meaning of the rule never occurred.  The court
therefore need not reach Creative's alternative argument that the
subpoena is burdensome and unnecessary.  Velcro's motion to
compel the inspection of Creative's premises is denied and
Creative's motion to quash the subpoena and notice is granted.[6]
Creative's request that Velcro "pay [Creative's] reasonable
attorneys' fees and costs," Mem. Supp. Mot. Quash Insp. Subpoena
at 14, however, is denied because Creative has not made this
request through a separate motion.  See L.R. 7.1(a)(1).

B.   Morse's Motion to Quash or for a Protective Order

     Counsel for Velcro has also issued a subpoena to Morse which
requires him to appear for deposition and to produce a number of
documents.  Morse moves to quash the subpoena on the grounds that
the information sought is either irrelevant to this action or
duplicative of discovery which Velcro has already obtained from
Paiho and Rocha.  In particular, Morse argues that the proper
scope of discovery in this case encompasses only Velcro's claim

---

     [6]The notice is quashed because it was issued to a non-party
and, in any event, Velcro does not argue that it had any effect
independent of the subpoena.

that Paiho's current process for making fasteners infringes the patents, while Velcro seeks to question Morse about five new extrusion lines for Paiho which are still in the works at Creative.  Velcro rejoins that the new extrusion lines do in fact bear upon the issues in this action, including (1) Paiho's invalidity defense based on the asserted obviousness of the patents, (2) Velcro's claims for enhanced damages based on Paiho's allegedly willful infringement, and (3) Velcro's claim for permanent injunctive relief.

This court has generally required the party seeking discovery in the face of a relevance objection to bear the initial burden of showing the relevance of the sought-after information.  Gill v. Gulfstream Park Racing Ass'n, 2005 DNH 110, 2005 WL 1711119, at *1 n.2 (D.N.H. July 21, 2005); Caouette v. OfficeMax, Inc., 352 F. Supp. 134, 136 (D.N.H. 2005).  In the court's view, Velcro has failed to carry its burden, even though "it is not an onerous one."  Diaz-Padilla v. Bristol Myers Squibb Holding Ltd. Liab. Co., 2005 WL 783076, at *2 (D.P.R. Apr. 4, 2005) (citing Caouette among like authorities).

First, although evidence that an invention has been copied can inform the obviousness inquiry, see, e.g., Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1285 (Fed. Cir. 2000), such evidence "is legally irrelevant unless the [copied

invention] can be shown to be an embodiment of the claims."
Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1346
(Fed. Cir. 2001); see also Iron Grip Barbell Co. v. USA Sports,
Inc., 392 F.3d 1317, 1324 (Fed. Cir. 2004) ("Not every competing
product that arguably fails [*sic*] within the scope of a patent is
evidence of copying.  Otherwise every infringement suit would
automatically confirm the nonobviousness of the patent.")
Creative's work on the new extrusion lines for Paiho, then,
constitutes evidence of copying relevant to Paiho's obviousness
defense only if those lines read on the patents-in-suit.[7]

In its objection to the motion to quash, Velcro makes no
attempt to show that Paiho's new extrusion lines will infringe.
While Velcro suggests that it cannot make this showing without
the discovery sought from Morse, Opp'n Mot. to Quash Morse

---

[7]Even if this is true, the copying would not necessarily
provide "compelling" evidence of nonobviousness, contrary to
Velcro's assertion.  Commentators have taken the view that, in
the absence of additional evidence suggesting the reason for the
copying, "proof of copying is currently best viewed as only a
weak form of circumstantial proof of non-obviousness." 3 R. Carl
Moy, Moy's Walker on Patents § 9:60 (4th ed. 2003); see also 2
Donald R. Chisum, Chisum on Patents § 5.05[5][d], at 5-721--5-722
(1978 & 2003 supp.) ("It would seem that copying . . . should be
given little if any weight in determining non-obviousness") cf.
Advanced Display, 212 F.3d at 1285-86 (treating copying as
"persuasive evidence" of nonobviousness where preceded by
repeated unsuccessful attempts to design claimed invention and
produced "identical replica" through reverse engineering).

Subpoena at 7-8, it also acknowledges that it has received extensive discovery from both Paiho and Rocha on the subject of the new lines.  Id. at 3.  Velcro has not demonstrated that these materials suggest that the Paiho extrusion lines under manufacture at Creative will infringe the patents-in-suit.  Nor has Velcro excused its inability to make such a showing through, e.g., some suggestion that Morse has information relevant to this showing that Paiho or Rocha did not.  Under these circumstances, Velcro has not met its initial burden to show the relevance of the new extrusion lines to Paiho' obviousness defense.

Second, while the infringer's deliberate copying can support the conclusion that the infringement was willful, it necessarily follows that the copying in question must manifest itself in the accused processes, rather than in other processes which the infringer has yet to begin using.  See, e.g., Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1414 (Fed. Cir. 1996).  Velcro provides no authority for the proposition that processes which are not themselves the subject of the infringement action and, furthermore, remain in the design stage during the pendency of the action, show that the accused processes represent willful infringement.  Cf. Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1222 (Fed. Cir. 1995) (reversing willfulness finding, based on continued production of

literally infringing product after infringement suit commenced and after development of product ultimately found to infringe only under doctrine of equivalents, because "partial conversion to [equivalently infringing] product while continuing some of the [literally infringing] production is not probative of willfullness for the [literally infringing] continuing production").

Furthermore, Velcro does not explain how nonaccused processes could be used to show willful infringement of accused processes without first finding that the nonaccused processes are themselves infringing, which would seem to necessitate a separate trial with attendant constitutional and procedural protections for the alleged infringer.  Based on the argument set forth in Velcro's opposition to the motion to quash, the court concludes that Paiho's new extrusion lines are not relevant to whether its current production lines wilfully infringe, or for that matter, to the amount of any reasonable royalty due Velcro for Paiho's infringement through its accused processes and products.

Finally, given Velcro's assertion that "permanent injunctions usually flow from a finding of infringement," Opp'n Mot. to Quash Morse Subpoena at 7 (citing MercExchange, LLC v. eBay, Inc., 401 F.3d 1323, 1338 (Fed. Cir. 2005)), the court fails to appreciate how Paiho's new extrusion lines could have

any effect on Velcro's right to that relief.  <u>MercExchange</u>, 401
F.3d at 1338-39 (reciting "rule . . . that a permanent injunction
will issue once infringement and validity have been adjudged,"
absent contravention of public interest).  Velcro's right to a
permanent injunction, then, depends on whether Paiho's accused
products infringe valid patents, not on whether its nonaccused
products do.  Again, whether the new extrusion lines infringe
must be decided in a different proceeding.  Velcro has therefore
failed to carry its initial burden to show the relevance the
information it seeks from Morse on Paiho's new extrusion lines
has to this case.

Velcro also argues that, whatever the relevance of the new
extrusion lines, it can question Morse on his knowledge of
Paiho's current manufacturing lines.  Velcro does not dispute,
however, Morse's statement that he had no involvement at all in
the design, manufacture, or installation of that equipment and
that he has had only "limited involvement in minor repairs and
replacement parts with respect to such equipment."  Morse Aff.
¶ 4.  Velcro also provides no basis for its apparent suspicion
that whatever knowledge Morse has of Paiho's current extrusion
lines based on this "limited involvement" will not largely or
wholly overlap with what Velcro has learned on that subject from

28

Paiho and Rocha.[8]  Accordingly, the court agrees with Morse that
the discovery Velcro seeks from him on Paiho's current
manufacturing processes is "unreasonably cumulative or
duplicative" of the discovery Velcro has already received from
Paiho and Rocha on this subject.  Fed. R. Civ. P. 26(b)(2)(I).
Morse's motion to quash the subpoena is therefore granted.


C.    Paiho's Motion to Compel

        Paiho has moved to compel Velcro to produce a number of
categories of documents that Paiho sought in prior document
requests or demanded following the depositions of two of Velcro's
senior employees.  Paiho served the document requests at issue on
November 23, 2004, and July 1, 2005.  The depositions at issue
occurred on June 21, 2005, and July 19, 2005.  Following an
extension granted by the court on joint motion of the parties on
June 2, 2005, the discovery deadline in this matter expired on
August 23, 2005.  Paiho filed its motion to compel on September
1, 2005, together with its motion for reconsideration of the
court's denial of its previous motion to extend the discovery

---

        [8]Velcro claims that it needs to ask Morse about material
that Rocha and Paiho did not produce until after Velcro had
already deposed Rocha.  In the absence of some suggestion that
Morse has any knowledge of these materials, however, this
argument does not counsel in favor of Morse's deposition.

                                29

cutoff and continue the trial and related pre-trial filing deadlines, which was itself subsequently denied.  Velcro objects to the motion to compel on the grounds that (1) Paiho waited too long in filing it and (2) Paiho has failed to show that the documents it seeks are relevant.

The First Circuit has cautioned that a party may waive its rights to certain discovery by failing to assert them in a timely manner.  JOM, Inc. v. Adell Plastics, Inc., 193 F.3d 47, 51 (1st Cir. 1999); see also DesRosiers v. Moran, 949 F.2d 15, 22 n.8 (1st Cir. 1991).  Of particular relevance here, other circuit courts have affirmed the denial of motions to compel filed after the court-imposed discovery deadline in the absence of some justification for the delay.  Rosetto v. Pabst Brewing Co., 217 F.3d 539, 542 (7th Cir. 2000); Material Supply Int'l, Inc. v. Sunmatch Indus. Co., 146 F.3d 983, 992 (D.D.C. 1998).

Here, despite the fact that Paiho must have known that the discovery deadline had passed by the time it moved to compel, Paiho offers no explanation for its failure to act sooner, and none is apparent from the materials submitted in support of the motion to compel.  Indeed, Paiho knew of some the alleged shortcomings in Velcro's document production by February 18,

2005, having received Velcro's response on January 25, 2005.[9]
Although Paiho suggests that it did not learn of the existence of
other allegedly responsive documents until June 21, when it took
one of the depositions at issue, Paiho nevertheless allowed weeks
to pass before following up on its counsel's verbal requests that
Velcro produce those documents, via a July 12 letter to Velcro's
counsel.  Despite the failure of Velcro's counsel to make any
response to the letter, Paiho did not take any action until it
filed the motion to compel on September 1.[10]

Furthermore, when Paiho first moved to extend the discovery
deadline and to continue the trial, on August 19, its motion made
no mention of any outstanding document requests.  Paiho did not
file the motion to compel until after the court had already

---

[9]Paiho served the other document request on July 1 and
received a response on July 15.  Paiho's brief in support of its
motion to compel does not state that it ever raised the
sufficiency of this response with Velcro.  Similarly, although
Paiho claims that the deposition it took on July 19 confirmed the
existence of unproduced documents responsive to its initial
document request, it never raised this point with Velcro until
the motion to compel.  Thus, although Paiho's motion to compel
certifies that its counsel has "conferred with counsel for Velcro
regarding the subject of this motion" before filing, Mot. Compel
Prod. at 3, this certification does not appear to be completely
accurate based on the materials submitted by Paiho.

[10]On August 22, Paiho's counsel did e-mail his counterpart
refusing to confirm a date for the deposition of one of Velcro's
employees until the documents were produced.  The discovery
cutoff, however, lapsed the next day.

denied that motion, and simultaneously with its motion for reconsideration of the denial.  At that point, only seven weeks remained until the scheduled trial of this matter.  In the court's view, this chronology calls into question whether Paiho has moved to compel out of a real need for the documents or simply in the hopes that the motion will serve to delay trial despite the court's denial of any continuance.  Under these circumstances, the court concludes Paiho has waived its right to the discovery it seeks by failing to file its motion to compel in a timely manner.  The motion is therefore denied.

<u>Conclusion</u>

For the foregoing reasons, the court takes no action on Paiho's first motion for partial summary judgment (document no. 60) or second motion for partial summary judgment (document no. 63) or Velcro's motion to strike Paiho's replies on the motions for partial summary judgment or to file a sur-reply (document no. 72).  Each side shall submit a memorandum of law not to exceed fifteen pages setting forth its construction of the term "projections" in claim 1 of the '243 patent by October 14, 2005. Each side shall file a response, not to exceed five pages, to other's claim construction memorandum by October 24, 2005, if it chooses to do so.

Velcro's motion to compel the inspection of Creative (document no. 44) is DENIED; Creative's motion to quash the subpoena and notice issued to it (document no. 49) is GRANTED except insofar as the motion seeks attorneys' fees and costs, as to which it is DENIED.  Morse's motion to quash the subpoena issued to him (document no. 77) is GRANTED; the motion is MOOT to the extent it seeks a protective order.  Finally, Paiho's motion to compel (document no. 79) is DENIED.

SO ORDERED.

Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

October 3, 2005

cc:  John L. DuPre, Esquire
     Colin C. Durham, Esquire
     Edward A. Haffer, Esquire
     Gregory A. Madera, Esquire
     N. Scott Pierce, Esquire
     Arnold Rosenblatt, Esquire
     Mark C. Rouvalis, Esquire
     Craig R. Smith, Esquire
     Jeremy T. Walker, Esquire
     Benjamin D. Enerson, Esquire