UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Velcro Industries B.V.
and Velcro USA Inc.</u>

    v.                                        Civil No. 04-cv-242-JD

<u>Taiwan Paiho Limited</u>

<u>O R D E R</u>

    Velcro Industries B.V. and Velcro USA Inc. (collectively, "Velcro") have filed a number of motions in limine seeking to preclude the defendant, Taiwan Paiho Limited, from presenting certain evidence and arguments at the upcoming trial of Velcro's patent infringement claims against Paiho.  Velcro has also filed a motion to strike certain portions of Paiho's amended pre-trial statement and exhibit list.  Paiho has filed an objection to each of the motions.

    At the outset, the court notes that <u>none</u> of these seven motions contains the certification required by Local Rule 7.1(c), <u>i.e.</u>, that the moving party has made a good faith effort to obtain its adversary's concurrence in the relief sought.  This requirement exists to prevent unnecessary motion practice from taxing the resources of the parties and the court.  Here, based on the court's analysis of the motions, adherence to the rule could have achieved this effect by significantly narrowing the issues presented in the motions or possibly even eliminating the

need for some of them in their entirety.  Counsel are reminded that they have an obligation to attempt to resolve disputes on their own before seeking the court's intervention.

I.   Velcro's Motion to Preclude Paiho
     from Construing Claim Terms at Trial

Velcro has moved to prevent Paiho from offering evidence at trial construing the terms of the patent claims at issue on the grounds that (1) such evidence should not be permitted in light of Paiho's prior agreement that all terms other than those disputed during the claim construction process in this matter would receive their ordinary meaning, and (2) Paiho intends to introduce such evidence in the form of improper expert opinion on an issue of law, i.e., the meaning of the terms.

In its objection, Paiho acknowledges the parties' agreement that all claim terms other than those raised during the claim construction process would receive their ordinary meaning.  Paiho charges, however, that Velcro intends to attribute "a meaning other than its ordinary meaning" to the term "unacceptable deformation" at trial in violation of the parties' agreement. Paiho therefore argues that it should be allowed to respond with the challenged expert testimony and other evidence to "be considered by the Court in the appropriate construction of the claim term."  Paiho adds that the term "unacceptable deformation" fails to "particularly point[] out and distinctly claim[]" the

subject-matter of the invention as required by 35 U.S.C. § 112, ¶ 2, and therefore renders the patent claims containing the term invalid. See, e.g., Bancorp Servs., LLC v. Hartford Life Ins. Co., 359 F.3d 1367, 1371 (Fed. Cir. 2004). Thus, Paiho suggests, precluding any evidence on the meaning of "unacceptable deformation," as Velcro seeks to do, will compel the conclusion that the claims which contain the term are indefinite.

During the claim construction process in this matter, conducted during this past winter, the court construed only the terms "extrusion" and "means for providing pressure" as they appear in the claims-in-suit. 2005 DNH 35, 2005 WL 483400, at *1 (D.N.H. Mar. 2, 2005). The inquiry was limited to those two terms because the parties had agreed beforehand that none of the other terms from the relevant claims was disputed. Velcro Cl. Constr. Br. at 2; Paiho Cl. Constr. Br. at 1. In reaching this agreement, Velcro and Paiho exchanged lists of disputed claim terms, followed by proposed constructions of those terms, pursuant to the Rule 26(f) scheduling order issued in this case.

This agreement means, as both sides seem to recognize in their briefing on the motion in limine, that all but the terms considered as part of the claim construction process simply have their ordinary meaning for purposes of determining the other issues in this case. As the court noted at the final pretrial conference, it initially had some misgivings about this approach,

given Markman's command that "in a case tried to a jury, the court has the . . . obligation to construe as a matter of law the meaning of language used in the patent claim."  Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  But the Federal Circuit has explained that, notwithstanding Markman, "when the parties do not dispute that the words of the claims simply mean what they say, the district court is not required to add an additional layer of complexity by 'constructing' the words of the claims merely to reiterate those words in a jury instruction."  Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1367 (Fed. Cir. 2004) (citing U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1567 (Fed. Cir. 1997)); accord 3A Kevin F. O'Malley et al., Federal Jury Practice & Instructions § 158.02, note (5th ed. 2001 & 2005 supp.).  Instead, as Paiho recognizes in its proposed jury instructions, Paiho's Prop. Jury Instr. § 2.4.1(c), where "there [is] no dispute as to the meaning of technical terms or words of art" in the claims, the court may instruct the jury to the effect "that the language of the claims [is] to have its plain meaning."[1]  U.S. Surgical, 103 F.3d at 1570.

---

[1] The court notes that Velcro has objected to Paiho's proposed instruction in this regard.  Accordingly, the court's reference to Paiho's proposed instruction is not intended to adopt it.  The court will resolve Velcro's objection to the proposed instruction at the appropriate time.

4

Here, Paiho wants to dispute the meaning of a number of claim terms at trial, including "unacceptable deformation," despite the fact that it did not identify those terms as disputed during the claim construction process.  See Paiho's Pretrial Statement § 3(B) (identifying "disputed issues of law" for trial to include "ordinary meaning" of terms "strip-like," "unacceptable deformation," "sufficiently cooled," "desired temperature," "extending generally toward," "molten," and "in a direction along the length of said member, extending in generally opposite directions").  When a party does not request claim construction at the appointed stage of the proceedings, however, it waives its right to do so at trial.  Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1360 (Fed. Cir. 2004); see also Stairmaster Sports/Med. Prods., Inc. v. Groupe Procycle, Inc., 25 F. Supp. 2d 270, 278-79 (D. Del. 1998) (refusing to consider claim construction argument raised during summary judgment phase by party who had conceded during claim construction phase that term did not need construction).  By agreeing that no claim terms other than those addressed in the claim construction order were disputed, then, Paiho has waived its right to seek a construction of any other terms at trial.[2]  See Tegal Corp. v. Tokyo Electron

---

[2]The court acknowledges that it took a different approach in its order deferring action on Paiho's motions for summary judgment, considering the party's claim construction arguments as to one of the terms integral to the summary judgment analysis and

Am., Inc., 257 F.3d 1331, 1344 (Fed. Cir. 2001). Paiho therefore cannot present any evidence at trial going to claim construction.

For the same reason, the court also will not allow Paiho to present any evidence or argument at trial in support of its contention that the term "unacceptable deformation" is indefinite and therefore renders the terms containing the phrase invalid. "A determination of indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd., 401 F.3d 1367, 1371 (Fed. Cir. 2005) (internal quotation marks omitted); see also Honeywell Int'l, Inc. v. Int'l Trade Comm'n, 341 F.3d 1332, 1338 (Fed. Cir. 2003) ("If the court determines that the claim is not amenable to construction, then the claim is invalid as indefinite . . . .") (internal quotation marks omitted). A party therefore cannot deny that a dispute exists as to the meaning of a term during the claim construction process, only to challenge the same term as indefinite at trial. See Eli Lilly, 376 F.3d at 1360 (holding that when party fails to request claim construction before trial, it "thereby implicitly concede[s] that the meaning of the terms in [the claim] are

---

requesting claim construction arguments as to another such term. Raising claim construction arguments for the first time on summary judgment, however, does not create unfair surprise to the same extent as raising them for the first time in a final pre-trial statement.

clear") (emphasis added); <u>Unitherm Food Sys., Inc. v. Swift Eckrich, Inc.</u>, 375 F.3d 1341, 1350 (Fed. Cir. 2004) (reasoning that where party "disputed explicitly" construction of only one term, "[p]resumably, all other claim terms were undisputed because <u>one of ordinary skill in the art would understand their plain meanings</u>") (emphasis added).

Paiho's prior agreement that the parties did not dispute the meaning of "unacceptable deformation," then, prevents Paiho from arguing at trial that the term actually has no meaning. Velcro's motion to preclude Paiho from construing claim terms at trial is granted. Paiho will not be permitted to present evidence or argument as to the construction of any claim term, including any evidence or argument that any claim term is indefinite.[3]

## II.   Velcro's Motion to Preclude Evidence Inconsistent with the Claim Construction Order

Velcro anticipates that Paiho will also seek to present evidence at trial which contradicts the court's construction of the term "extrusion." Specifically, Velcro points out that one of Paiho's expert witnesses, Dr. Eldridge Mount, has opined in his rebuttal report that the accused process does not create an

---

[3] By the same token, Velcro will not be allowed to present any evidence or argument on claim construction at trial, because it also has not requested the construction of any term other than those identified during the claim construction process.

"extrusion" between the extruder and die apparatus and the forming roller because "the extrusion is not formed until after the molten plastic exits from the die/forming roller apparatus at the downstream edge of the die face." Smith Aff. ¶ 5, Ex. C, at 22. Velcro argues that this opinion contradicts the court's prior construction of "extrusion" to mean "material exiting extruding equipment."

The meaning of "extrusion" is a question of law, Markman, 52 F.3d at 979, which has already been settled by the court as the parties presented it during the claim construction process in this matter. Although Paiho accepts these two points, it maintains that it can "present evidence to when and where in Paiho's process material exits extruding equipment" to assist the jury in its infringement analysis. Mem. Obj. Mot. Limine at 3. In support of this position, Paiho argues that the claim construction order merely defined "extrusion" to mean "material exiting extruding equipment," providing no further enlightenment as to the definition of "exiting."

The court disagrees with this characterization of the claim construction process. At that time, Paiho argued that "extrusion" meant, inter alia, "a form produced by an extruding process that holds a shape defined by an extruding die after exiting the extruding die." Paiho Cl. Constr. Br. at 11 (emphasis added); see also id. at 8, 9, 10. This argument rests

on the premise that the form becomes an extrusion "after exiting the extruding die." Indeed, according to Paiho's claim construction argument, the form is an "extrusion" if and only if it keeps holding, <u>after that point</u>, the shape defined by the die.

According to Mount's rebuttal report, however, the form becomes an extrusion <u>not</u> after exiting the extruding die, but "after the molten plastic exits from the die/forming roller apparatus at the downstream edge of the die face." Paiho's contrary argument during the claim construction process on when the form becomes an "extrusion" vis-a-vis the die thus not only raises the question of whether Paiho should be allowed to change its position for purposes of trial, but also demonstrates Paiho's understanding that the point in the process at which the form becomes an "extrusion" presents a legal question derived from the construction of the term, rather than a factual question dependent on the characterization of its own process, as it now asserts. Mount's opinion necessarily depends on reading the phrase "extruding equipment," as used in the court's claim construction, to encompass what he calls "the die/forming apparatus," rather than simply the extruder and die. The meaning of the court's order construing the claims is no less an issue of law than the meaning of the claims themselves. <u>See</u> <u>EZ Dock, Inc. v. Schaefer Sys., Inc.</u>, 2003 WL 1610781, at *12 (D. Minn. Mar. 8, 2003) ("parties are not entitled to 'construe' the Court's claim

construction"); accord Monarch Life Ins. Co. v. Ropes & Gray, 65 F.3d 973, 983 (1st Cir. 1995) (noting that interpretation of court's order presents issue of law).  Mount therefore cannot testify to what the court meant by "extruding equipment," either in general or with specific reference to Paiho's process, i.e., by opining that the process does not feature an extrusion between the pressure means and the forming roller because the material has not "exit[ed] the extruding equipment" at that point.

Furthermore, the court does not read "extruding equipment" in the way in which Mount does.  In adopting Velcro's proposed construction of "extrusion" as "material exiting extruding equipment," the court intended that "extruding equipment" encompass the extruder and die apparatus, not any portion of the forming roller.  The parties did not present anything during the claim construction process to suggest that the term "extruding equipment" could include the forms into which material is extruded; again, Paiho's proffered construction assumed that the extrusion was formed after it exited the head of the die.  If Paiho believed that the court's use of the phrase "material exiting extruding equipment" left some ambiguity as to what "extruding equipment" meant, the proper course would have been to move for clarification of the claim construction order, or to reopen claim construction.  Having failed to do so, Paiho cannot present expert opinion founded on Mount's own understanding of

10

the phrase "extruding equipment" and without regard for what the court meant by it.

Velcro's motion in limine is therefore granted. Mount shall not be permitted to testify to the effect that the accused process does not create an "extrusion" between the extruder and die apparatus and the forming roller because the extrusion is not formed until after the molten plastic exits from the die/forming roller apparatus at the downstream edge of the die face. Nevertheless, assuming the appropriate evidentiary and other prerequisites can be met, Mount may be permitted otherwise to describe the accused process with reference to the patented invention to assist the jury in determining the issue of infringement.

III. <u>Velcro's Motion to Preclude Evidence of Its Commercial Embodiments</u>

Velcro seeks to "preclude Paiho from offering any evidence relating to Velcro's method of manufacturing molded hook fasteners to argue noninfringement of the Patents-in-Suit." Mot. Limine at 1. In support of this relief, Velcro argues that its commercial embodiments of the patented invention are irrelevant to the infringement analysis, which requires a comparison of <u>Paiho's</u> accused process to the relevant claims of the patents-in-suit. Paiho acknowledges that evidence of Velcro's commercial embodiments is not in fact relevant to the issue of literal

11

infringement, but argues that the evidence is relevant to other issues in the case, including Velcro's doctrine of equivalents theory and Paiho's nonenablement and obviousness defenses, as well as its argument that the product-by-process claims of the patents-in-suit "are limited by the process limitations present in the claims." Mem. Obj. Mot. Limine at 4.

Velcro's motion seeks to preclude such evidence only insofar as it relates to noninfringement. Paiho's objection makes a preliminary showing that Velcro's commercial embodiments may be relevant to at least some of the other issues to be determined at trial. A final ruling on the admissibility of such evidence is best made in the context of the trial. Paiho shall obtain the court's approval prior to introducing such evidence.

Velcro also argues that the evidence should be excluded under Fed. R. Evid. 403 because it "<u>could</u> confuse the jury's analysis of infringement, <u>perhaps tending</u> to invite improper comparisons between the accused infringing processes and Velcro's process instead of the claims of the Patents-in-Suit." Mem. Supp. Mot. Limine at 4 (emphases added). As the language Velcro has chosen suggests, this notion is highly speculative and insufficient to justify the exclusion of relevant evidence under Rule 403. Velcro's motion in limine is denied.

IV.  Velcro's Motion in Limine to Preclude Evidence of
     Inequitable Conduct

Velcro seeks to prevent Paiho from offering any evidence of the patentee's allegedly inequitable conduct in procuring the patents-in-suit on the ground that Paiho failed to give notice that intended to pursue such a defense either in its answer or its responses to Paiho's interrogatories.  Although Paiho disputes this version of the procedural history in its objection to the motion, it announces that it "will not be asserting during the trial of this case that Velcro committed inequitable conduct before the Patent Office or that the Patents-in-Suit are unenforceable as a result of such conduct."  Mem. Obj. Mot. Limine at 2.  Nevertheless, Paiho argues that it "is entitled to introduce evidence that Velcro made inaccurate characterizations about prior art references during prosecution and that relevant art was withheld from the Patent Office and was not before the Examiner" on the ground that such evidence is relevant to rebutting the patents' statutory presumption of validity.  Id. Relatedly, Paiho contends that the evidence is relevant to its obviousness defense because "had [the allegedly withheld] art been considered it would have lead [sic] to a conclusion of obviousness . . . ."  Id. at 3.

Paiho's objection does not contain a single citation in support of this theory of relevance.  Any argument that the

13

statutory presumption of validity has been overcome because the applicant withheld information from the patent examiner is simply an inequitable conduct argument.  See Warner-Lambert Co. v. Teva Pharms. USA, Inc., 418 F.3d 1326, 1342 (Fed. Cir. 2005) (defining inequitable conduct to include "failure to disclose material information" with the intent to deceive the examiner).  Paiho has failed to show how evidence that the patentee withheld information as to prior art from the examiner is relevant to any issue besides an inequitable conduct defense, which Paiho has waived.  Paiho therefore cannot present any such evidence at trial.  Velcro's motion is granted.

V.  Velcro's Motion to Preclude References at Trial to Other Pending Lawsuits

Velcro seeks to preclude any reference at trial to other pending litigation between the parties.  Although the court can conceive of situations in which evidence of other litigation between the parties might be admissible, e.g., if Velcro had taken positions in other lawsuits which were inconsistent with its positions in this action, Paiho does not rely on any such situation in its objection.  Instead, Paiho claims that it "is entitled to advise the jury of Velcro's serial filing of lawsuits in a desperate attempt to cripple a competitor that is attempting to compete lawfully and in good faith."  Mem. Obj. Mot. Limine at 2.  Such an argument essentially concedes that Paiho wishes to

14

use the evidence for an improper purpose, rather than to show the existence or the nonexistence of any fact at issue in this case.

Paiho also argues that "[i]f the Court precludes reference to such lawsuits, then the Court must also exclude reference to facts relating to the allegations in such suits or it would be extremely prejudicial and unfair to Paiho."  Id.  Given that Paiho has not filed its own motion in limine on this issue, the court does not know what the "facts relating to the allegations in such suits are" and therefore cannot address the admissibility of such evidence at this point.  Finally, Paiho suggests that "the Court should not preclude reference to the Taiwan patent litigation [currently pending between the parties] and then allow Velcro to introduce evidence and argument relating to manufacturing and sales activities in Taiwan" because the jury might then award Velcro damages for Paiho's activities in Taiwan, which Paiho suggests would be improper in light of the pending action there.  Id. at 3.  Again, without knowing more about the nature of the Taiwanese action, the court cannot address this argument now.  Because Paiho has failed to articulate how evidence of its other pending lawsuits with Velcro would be admissible, Velcro's motion to preclude such evidence is granted.

VI. <u>Velcro's Motion to Limit Paiho's Evidence on Willful Infringement to its Interrogatory Answer</u>

Velcro seeks to prevent Paiho from arguing that any infringement of the patents-in-suit was not willful because the company obtained a legal opinion on the subject on the ground that Paiho previously gave an interrogatory answer stating that it had received oral advice from "a <u>Patent Engineer</u> from Song Jiang International Patent Law Office."  Smith Decl. ¶ 4, Ex. B, at 6-7 (emphasis added).  Velcro's argument is without merit. Assuming any evidentiary prerequisites can be met, Velcro can use the interrogatory answer to attempt to argue that Paiho did not in fact receive a "legal opinion," but merely oral advice from a "Patent Engineer."  Velcro's suggestion it "was unable to conduct appropriate discovery relating to this opinion," Mem. Supp. Mot. Limine at 4, is unpersuasive, given that the interrogatory answer was provided on May 16, 2005, and specifically named the law office in question.  Velcro's motion is denied.

VII. <u>Velcro's Motion to Strike Paiho's Amended Pre-Trial Filings</u>

Finally, Velcro moves to strike certain portions of Paiho's amended pre-trial statement and exhibit list on the ground that Paiho did not seek leave of court to amend these materials.  In its pre-trial statement, filed on September 14, 2005, Paiho identified "Velcro Product samples VEL 010899-010901" and "Rings from Paiho's forming rolls" as exhibits.  Paiho Pre-Trial

Statement § 7(A)(54) & (63), at 16.  Paiho's witness and exhibit lists, filed nine days later, also identified these documents, but added the phrase "and photomicrographs thereof" to the description of the Velcro product samples and the phrase "including the #2 #3, and #4 hook cavity rings and spacer rings, and photomicrographs thereof" to the "Rings from Paiho's forming rolls" entry.  Paiho Witness & Ex. List § II(A)(54) & (63), at 4-5.  On September 29, 2005, Paiho submitted amendments to its witness and exhibit lists, adding a parenthetical Bates number reference to the photomicrographs.  Paiho also submitted amendments to its final pre-trial statement, adding these Bates number references as well as information about the product samples and forming roll rings that had been included in Paiho's original witness and exhibit list but omitted from its original pretrial statement.

As Velcro acknowledges, it did not object to Paiho's separately filing witness and exhibit lists after the deadline for filing pre-trial statements.  Nor did Velcro object to the references to the product samples and forming roll rings in Paiho's original pre-trial statement on the grounds that the references were not specific enough to let Velcro know what materials Paiho was seeking to identify, or that Paiho had not

17

produced the documents in question.[4]  Velcro's motion to strike, then, is premised solely on the fact that Paiho's amendments added Bates number references to materials that had already been described in both its original pretrial statement and witness and exhibit list.  Velcro does not seriously claim that knowing the Bates number references of materials that Paiho had already identified as exhibits, without any objection from Velcro, has somehow prejudiced its trial preparation.  Velcro's motion to strike is therefore denied.

## Conclusion

For the foregoing reasons, Velcro's motion to preclude evidence inconsistent with the claim construction order (document no. 88) is GRANTED as more fully described above; Velcro's motion to preclude Paiho from construing claim terms at trial (document no. 89) is GRANTED as more fully described above; Velcro's motion to preclude evidence of its commercial embodiments (document no. 90) is DENIED as more fully described above; Velcro's motion to preclude evidence of inequitable conduct (document no. 91) is

---

[4] At the time Velcro's objections to Paiho's pretrial statement were due, Paiho had already filed its separate witness and exhibit lists identifying the photomicrographs, which Velcro says it did not get until the day Paiho filed its amendments. Velcro's suggestion that the chronology of Paiho's filings deprived it of the opportunity to object to the inclusion of documents on Paiho's exhibit list which it had failed to provide in discovery is therefore unsupported.

GRANTED; Velcro's motion to preclude evidence of other pending lawsuits (document no. 92) is GRANTED as more fully described above; Velcro's motion to limit Paiho's evidence on willful infringement to its interrogatory answer (document no. 93) is DENIED; and Velcro's motion to strike Paiho's amended pretrial statement and witness and exhibit list (document no. 125) is DENIED.

  SO ORDERED.

             /s/ Joseph A. DiClerico, Jr.
             Joseph A. DiClerico, Jr.
             United States District Judge

October 12, 2005

cc: John L. DuPre, Esquire
   Colin C. Durham, Esquire
   Edward A. Haffer, Esquire
   Gregory A. Madera, Esquire
   N. Scott Pierce, Esquire
   Arnold Rosenblatt, Esquire
   Mark A. Rouvalis, Esquire
   Craig R. Smith, Esquire
   Jeremy T. Walker, Esquire
   Benjamin D. Enerson, Esquire
   Brian T. Moriarty, Esquire