UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

Velcro Industries B.V.
and Velcro USA, Inc.

    v.                                   Civil No. 04-cv-242-JD
                                             Opinion No. 2005 DNH 142

Taiwan Paiho Limited

O R D E R

The defendant, Taiwan Paiho Limited, has filed two motions for partial summary judgment on patent infringement claims brought by the plaintiffs, Velcro Industries, B.V. and Velcro USA, Inc. (collectively, "Velcro").  Velcro objects to each motion and has also filed a motion to strike Paiho's reply to one of the objections in its entirety and the reply to the other objection in part.[1]  Paiho objects to the motion to strike.  The court previously deferred any action on the motions pending the parties' submission of additional briefing addressing the construction of the term "projections" as it appears in one the claims at issue.  2005 DNH 138, slip op. at 15-17.  Each side has now submitted a principal brief on that subject, followed by a reply brief responding to its adversary's arguments.

_____

[1]In the alternative, Velcro has moved for leave to file a sur-reply, to which Paiho does not object.

I.   <u>Paiho's Motions for Partial Summary Judgment</u>

　　　A.   <u>Standard of Review</u>

On a motion for summary judgment, the moving party has the burden of showing the absence of any genuine issue of material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the movant does so, the court must then determine whether the nonmoving party has demonstrated a triable issue.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).  Summary judgment enters against a party "who fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 322-23.

　　　B.   <u>Background</u>

The relevant background facts are set forth in the order deferring action on the partial summary judgment motions, 2005 DNH 138, slip op. at 2-5, and therefore will be repeated here only insofar as is necessary to explain the court's analysis. Claim 1 of the '243 patent claims:

　　　An elongate member, comprising:  a base portion, and a <u>great multiplicity of resiliently flexible hook-like</u> <u>projections extending generally toward said base</u>

2

<u>portion, with at least some adjacent ones of said
projections, in a direction along the length of said
member, extending in generally opposite directions</u>;
said base portion and integral projections being formed
from an extrusion of molten plastic material by
providing a first, cooled forming roller having a
plurality of hook-forming cavities . . . ; providing a
second pressure roller in position for coaction with
said first forming roller; concurrently rotating said
first and second rollers in opposite directions . . . ;
directing said extrusion in between said first and
second rollers at an interface thereof so that said
plastic material fills said hook-forming cavities to
form said base portion of said strip-like fastener
member and <u>with said hook-like projections extending
integrally from one surface of the base portion, each
said hook-like projection having a free end portion</u>;
cooling said fastener member . . . by carrying it on
the periphery of said rotating cooled forming roller
through a substantial portion of a revolution of said
forming roller; and removing said strip-like fastener
member from the first forming roller . . . so that said
hook-like projections are withdrawn from said hook-
forming cavities, after being sufficiently cooled so
that unacceptable deformation of the hook-like
projections is avoided . . . by drawing the free end
portion of each hook-like projection through the throat
portion of the respective one of said cavities, <u>the
free end portion of each said hook-like projection
extending generally toward the base portion of said
fastener member</u>.

U.S. Patent No. 4,872,243, col. 10, lines 9-52 (filed Sept. 9,

1998) (emphases added).

In its order deferring action on the summary judgment

motions, the court construed the phrase "with at least some

adjacent ones of said projections, in a direction along the

length of said member, extending in generally opposite

directions" to require that the projections which are adjacent

3

along the length of the member extend in generally opposite directions.  2005 DNH 138, slip op. at 14-15.

Paiho manufactures molded plastic hook fasteners under the name "Easy Tape."  First Rocha Decl. ¶ 4, Exs. AA, BB.  One of these products consists of rows of hooks extending along the length of the product where the hooks in one row all face in one direction and the hooks in the alternating row all face in the opposite direction.  Id. ¶ 8; see also id. ¶ 4, Ex. AA.  Another product consists of "double hooks," i.e., "hooks that contain two hook-like projections from each stem."  Id. ¶ 6; see also id. ¶ 4, Ex. BB.  Paiho has never produced plastic hook fasteners of any other design.  Id. ¶¶ 8-9.

C.  Discussion

Based on the foregoing facts, Paiho seeks summary judgment on the ground that its fasteners "have hooks in the same direction."  Mem. Supp. First Mot. Part. Summ. J. at [2].  In Rocha's words, however, each "stem" on Paiho's double-hook fasteners contains "two hook-like projections" which appear to face away from each other.  Rocha Decl. ¶ 4, Ex. BB.  Thus, resolving Paiho's first motion for partial summary judgment depends, at least in part, on whether the phrase "adjacent ones of said projections . . . extending in generally opposite

4

directions" encompasses two hooks extending in generally opposite directions from a single projection.  See 2005 DNH 138, slip op. at 15–16.

In response to the court's order for briefing on this claim construction issue, the parties have proffered similar constructions of the term "projections."  Velcro argues that a "projection" is "material that projects from the base of the member and has a general hook shape, with a free end portion that extends toward the base of the member."  Velcro Cl. Constr. Br. at 1.  Paiho argues that "'projection' means the entire portion of the elongate member that extends from the base portion of the member up to and including any free end portions."  Paiho Cl. Constr. Br. at 1.  Thus, the parties differ on whether a single "projection" can have more than one "free end portion."  Velcro says no, and that therefore a single double hook amounts to "two 'hook-like projections' that abut each other" and extend in generally opposite directions.  Velcro Cl. Constr. Br. at 6. Paiho, however, contends that the term "projections" is not limited to projections with only one free end portion. Accordingly, Paiho characterizes a double hook as a single projection which has two free end portions extending in generally opposite directions, but which does not itself extend in a direction generally opposite from its adjacent projection.

5

The court set forth the methodology for claim construction in its prior claim construction order in this case:

> In the absence of an express intent to impart a novel meaning to the claim terms, the words take on the full breadth of the ordinary and customary meanings attributed to them by those of ordinary skill in the art.
>
> To ascertain this meaning, the court must first examine the intrinsic evidence, which includes the claims themselves, the specifications, and any prosecution history submitted by the litigants.  The court starts with the actual language of the claim.  If the claim language is clear on its face, then the consideration of the rest of the intrinsic evidence is restricted to determining if a deviation from the clear language of the claims is specified.
>
> Although the court must therefore construe the claims in light of the specifications, it must take care not to read limitations from the specifications into the claims.  If the meaning of the claim limitations is apparent from the totality of the intrinsic evidence, then the claim has been construed. If, and only if, a "genuine ambiguity" still persists, the court may turn to extrinsic evidence, such as expert testimony, to interpret the claim.

2005 DNH 38, 2005 WL 483400, at *1 (internal citations, quotation marks, and bracketing omitted).

Beginning with the language of the claim itself, Paiho points out that claim 1 uses the term "projections" ten times, not once stating that a projection can have only one free end portion.  "A word or phrase used consistently throughout a claim should be interpreted consistently."  Photometrics, Inc. v. N. Telecom, Inc., 133 F.3d 1459, 1465 (Fed. Cir. 1998).  Here, the

claim specifically describes the projections as "including free
end <u>portions</u> extending generally toward [the] base portion, with
at least some adjacent ones of said projections . . . extending
in generally opposite directions . . . ."  '243 patent, col. 10,
lines 12-16 (emphasis added).  Velcro does not point to the usage
of "projections" anywhere else in the claim to suggest that,
despite the plural form of "portions" in the language at issue,
the scope of "projections" is restricted to those with only one
free end portion each.[2]

Instead, Velcro argues that the claim "does not limit the
'hook-like projections' in size or relative positioning, except
for the . . . requirement that some of the hook-like projections
be adjacent, and that these adjacent hook-like projections extend
in generally opposite directions."  Velcro Cl. Constr. Br. at 5.
Velcro therefore suggests that "two back to back hook-like
projections can even abut each other."  <u>Id.</u> at 6.  This reading,
however, appears to ignore that the projections must be

_____

[2]Velcro itself cites the Federal Circuit's recent opinion in
<u>Free Motion Fitness, Inc. v. Cybex Int'l, Inc.</u>, ___ F.3d ___,
2005 WL 2241249 (Fed. Cir. Sept. 16, 2005), for the proposition
that the use of an indefinite article in a patent claim does not
restrict the accompanying noun to its singular form.  <u>Id.</u> at *5.
Thus, the claim's references to "a free end portion" do not limit
the projections to just one.  As <u>Free Motion Fitness</u> also
explains, even the use of the definite article in connection with
"free end portion" toward the end of the claim also does not
limit "projection" in the manner Velcro suggests.  <u>Id.</u> at *5.

"adjacent," rather than "abutting," and Velcro does not explain why "adjacent" should be read to encompass "abutting" in the context of the claim.  Cf. Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1373-74 (Fed. Cir. 2004) (reversing construction of "adjoining" to mean "adjacent" given dictionary's notation that "as between adjacent and adjoining, adjoining may more strongly indicate the existence of common bounding lines or points of junction") (internal quotation marks and bracketing omitted).  Indeed, as Paiho points out, the claim requires "hook-like projections extending integrally from one surface of the base portion . . . ."  '243 patent, col. 10, lines 34-35; see also id., lines 10-11.  Two projections that abut each other would not appear to extend integrally from the surface of the base portion, but from a common "stem" that itself extends from the base.  Velcro's interpretation of "projections" to embrace extensions from the base portion which abut each other is therefore inconsistent with the language of the claim.

Velcro further suggests that construing "projection" to mean a structure with two or more free end portions "pointing in different directions" flouts the requirement that the projections be "hook-like."  Velcro Reply Cl. Constr. Br. at 2.  To paraphrase the court's reasoning in considering the term "strip-like" in the claim construction order in this case, 2005 DNH 38,

2005 WL 483400, at *3, the adjective "hook-like" conveys a mere suggestion of configuration, rather than a complete resemblance to what Velcro now considers the shape of a hook, _i.e._, a "J" shape.  In any event, as the fact that both parties have been using the term "double hook" to describe the protuberances on Paiho's product attests, the common understanding of "hook" is not limited to those shaped like the letter J.

The court therefore concludes that, as Paiho argues, "projection" means the entire portion of the elongate member that extends from the base portion of the member up to and including any free end portions.  This construction of "projection," in contrast to Paiho's more limited reading, gives the term the full breadth of its ordinary and customary meaning.  Because the meaning of the term is clear from the language of the claim itself, "the court peruses the remaining intrinsic evidence for the sole purpose of determining if a deviation from the clear language . . . is specified."  2005 DNH 38, 2005 WL 483400, at *4 (internal quotation marks and footnote omitted).

Here, as Velcro acknowledges, the specification largely "mirrors the claim language" in relevant part.  Velcro Cl. Constr. Br. at 6-7.  Like the relevant passage from the claim, discussed _supra_, the specification notes that "the hook-like projections of the fastener member include free end portions,"

using that term in the plural.  '243 patent, col. 2, lines 51-52.
Furthermore, in describing the preferred embodiment, the
specification states that "the hook-forming cavities are provided
in the periphery of the forming roller such that adjacent ones of
the cavities, in a direction circumferentially of the roller,
extend or face in generally opposite directions."  Id., col. 7,
lines 24-28.  Because each projection corresponds to a single
cavity, id., lines 28-29, this description further undermines
Velcro's contention that "adjacent" projections can abut each
other.  See also id., lines 20-21 ("many variations are possible
with respect to the exact size, shape, and relative positioning
of the cavities . . . .") (emphasis added).  Neither Velcro's
principal claim construction brief nor its reply persuasively
demonstrates that any part of the specification is inconsistent
with Paiho's proffered construction of "projection."  Consistent
with the court's order deferring action on the motions for
partial summary judgment, neither party has submitted any
prosecution history or other intrinsic, or extrinsic, evidence
shedding light of the meaning of the term.[3]  The court therefore

---

[3]In requesting the additional briefing, the court announced
that it would "consider the parties' claim construction arguments
in light of the principles of waiver discussed" in the order,
2005 DNH 138, slip op. at 16, which noted that Paiho had
forfeited its ability to argue that the prosecution history
supported its construction of the term "adjacent" in seeking

adopts Paiho's proposed construction of "projection" to mean the entire portion of the elongate member that extends from the base portion of the member up to and including any free end portions.

Having construed "projection" and, in the order deferring action on the partial summary judgment motions, "adjacent," the court proceeds to "a comparison of the properly construed claims with the allegedly infringing product to determine whether the product embodies every limitation of the claims." <u>Biagro W. Sales, Inc. v. Grow More, Inc.</u>, ___F.3d ___, 2005 WL 2207685, at *3 (Fed. Cir. Sept. 13, 2005). Again, Paiho argues in support of its first motion for summary judgment that its fasteners do not have projections which are adjacent along the length of the member facing in generally opposite directions, but instead "are formed such that the hook cavities [*sic*] extend in the same direction along the length of the member." First Mot. Part. Summ. J. ¶ 3. As noted in Part I.B, <u>supra</u>, this argument is supported by the declaration of Gerald F. Rocha, who states, <u>inter alia</u>, that Paiho's single-hook fasteners "contain alternating rows of hooks extending along the length of the product where, in each row, the hooks face the same general direction along the length of the product." First Rocha Decl. ¶

---

summary judgment by failing to identify any dispute as to the meaning of that term during claim construction. <u>Id.</u> at 13–14.

8 and Ex. AA.  Rocha further attests that, although Paiho also
makes double-hook fasteners, "[b]y their nature double hooks in a
direction along the length of the product all extend in the same
direction."  Id. ¶ 7 and Ex. BB.

"'Literal infringement requires that the accused device
embody every element of the claim.'"  PC Connector Solutions LLC
v. SmartDisk Corp., 406 F.3d 1359, 1364 (Fed. Cir. 2005);
(quoting Builders Concrete, Inc. v. Bremerton Concrete Prods.
Co., 757 F.2d 255, 257 (Fed. Cir. 1985)).  Through Rocha's
declaration, Paiho has shown that its fasteners do not embody one
of the elements of claim 1 of the '243 patent, namely "adjacent
ones of [the hook-like] projections, in a direction along the
length of [the elongate] member, extending in generally opposite
directions."  Velcro has not responded with any evidence creating
a genuine issue of material fact as to Rocha's description of
Paiho's products.  In fact, Velcro does not purport to dispute
any of the facts set forth in the Rocha declaration submitted in
support of the motion.[4]

Instead, Velcro asserts that (1) Paiho's double-hook

_____

[4]Together with its objection, Velcro submitted the "expert
statement" of Dr. Lawrence R. Schmidt, an industrial engineer
retained by Velcro's counsel in connection with its infringement
claims against Paiho.  Velcro's objection, however, nowhere
references Schmidt's statement.

fasteners literally infringe the patent claim, (2) all of the
fasteners infringe under the doctrine of equivalents, and (3) due
to alleged omissions in its summary judgment papers, Paiho has
not met its burden to show the absence of a genuine issue of
material fact necessary for summary judgment.  The court will
address these arguments in turn.

Velcro contends that Paiho's double-hook fasteners "contain
adjacent hook-like projections that are in generally opposite
directions, and they are in the same row."  Opp'n First Mot.
Part. Summ. J. at 12.  This argument, however, cannot succeed in
light of the court's construction of "projection" to mean the
entire portion of the elongate member that extends from the base
portion of the member up to and including any free end portions.
Under this construction, each of the double hooks constitutes a
projection with two free end portions, which themselves extend in
generally opposite directions.  No two adjacent projections,
however, extend in directions generally opposite to each other.
Instead, the projections all extend in generally the same
direction, i.e., "from one surface of [the] base portion . . . ."
'243 patent, col. 10, lines 11-12.  No genuine issue of material
fact therefore exists as to whether the double-hook fasteners
literally infringe claim 1 of the '243 patent.

Velcro also asserts that, at the very least, a material

13

factual issue remains as to whether the accused products infringe under the doctrine of equivalents.  Under this doctrine, "a product or process that does not literally infringe . . . may nevertheless be found to infringe if there is an 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention."  <u>Warner-Jenkinson Co. v. Hilton Davis Chem. Co.</u>, 520 U.S. 17, 29 (1997).  The doctrine exists in recognition of the reality that

> If patents were always interpreted by their literal terms, their value would be greatly defeated. Unimportant and insubstantial substitutes for certain elements could defeat the patent, and its value to inventors could be destroyed by simple acts of copying.

<u>Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.</u>, 535 U.S. 722, 731 (2002); <u>see also</u> <u>Freedman Seating Co. v. Am. Seating Co.</u>, 420 F.3d 1350, 1358 (Fed. Cir. 2005).

Despite this salutary purpose, however, the Supreme Court has recognized that "the doctrine of equivalents, when applied broadly, conflicts with the definitional and public-notice functions of the statutory claiming requirement for patents."  <u>Warner-Jenkinson</u>, 520 U.S. at 29.  Two principles therefore operate to limit the potential reach of the doctrine: prosecution history estoppel and the "all elements rule."  <u>Freedman Seating</u>, 420 F.3d at 1358.  Paiho invokes both in support of its first motion for summary judgment, Mem. Supp. First Mot. Part. Summ. J.

14

at [6], but for reasons which will appear, the court need address only the all elements rule here.

Under the all elements rule, "an element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation." Freedman Seating, 420 F.3d at 1358; see also, e.g., Abbott Labs. v. Novopharm Ltd., 323 F.3d 1324, 1331 (Fed. Cir. 2003).  Paiho argues that finding equivalence between projections extending in the same direction, as featured on its fasteners, and projections extending in generally opposite directions, as claimed in the '243 patent, would impermissibly vitiate the opposite direction limitation. Mem. Supp. First Mot. Part. Summ. J. at 12.

The court agrees.  A corollary to the all elements rule, known as the "specific exclusion principle," Seachange Int'l, Inc. v. C-Cor, Inc., 413 F.3d 1361, 1378 (Fed. Cir. 2005), provides that when the scope of a claim is limited in a way that plainly and necessarily excludes a structural feature which is the opposite of the one recited in the claim, that different structure cannot be brought within the reach of the claim via the doctrine of equivalents.  SciMed Life Sys., 242 F.3d at 1346; see also Asyst Techs., Inc. v. Emtrak, Inc., 402 F.3d 1188, 1196 (Fed. Cir. 2005) (citing cases).  Here, claim 1 of the '243

15

patent is expressly limited to projections which are adjacent along the length of the member and which extend in generally opposite directions.  The claim therefore necessarily excludes projections which are adjacent along the length of the member and which extend in the same direction, because, as Paiho notes, Mem. Supp. First Mot. Part. Summ. J. at 12, "opposite" is the opposite of "same."[5]  To paraphrase the Federal Circuit, "it would defy logic to conclude that ["same"]--the very antithesis of ["opposite"]--could be insubstantially different from a claim limitation requiring ["opposite"], and no reasonable juror could find otherwise."  Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1106 (Fed. Cir. 2000).  Paiho has therefore demonstrated its entitlement to summary judgment on claim 1 of the '243 patent notwithstanding the doctrine of equivalents.

In its objection to the first motion for summary judgment, Velcro does not respond to Paiho's invocation of the all elements rule.  Velcro states, as the totality of its doctrine of equivalents argument, that "Paiho's molded hook fastener products and method of manufacture are clearly 'equivalent' to those described in the 'Opposite Direction' claim limitations, as any

---

[5]By the same logic the claim also excludes projections which are adjacent along the breadth of the member and which extend in generally opposite directions, because "length" is the opposite of "breadth."

purported differences would be insubstantial."  Opp'n First Mot.
Part. Summ. J. at 13.  This is insufficient to defeat Paiho's
properly supported motion for summary judgment on this issue.  As
the Federal Circuit has held, a patent holder who "present[s] the
district court with only conclusory statements regarding
equivalence, without any particularized evidence and linking
argument as to the insubstantiality of the differences between
the claimed invention and the accused device" has not raised any
genuine issue of material fact as to the doctrine of equivalents.
PC Connector Solutions, 406 F.3d at 1364.

Finally, as is apparent from the portions of Paiho's summary
judgment papers cited in the foregoing analysis, there is no
merit to Velcro's argument that Paiho failed to meet its burden
to show the absence of a genuine issue of material fact as to
Velcro's claim for infringement of claim 1 of the '243 patent.
There is also no merit to Velcro's related contention that it
"has at least shown that there are issues of material fact that
must be decided at trial," Opp'n First Mot. Part. Summ. J. at 13,
particularly in light of its failure to dispute Paiho's account
of the characteristics of the accused products.  Paiho's first
motion for partial summary judgment is granted insofar as it
seeks summary judgment on Velcro's claim for infringement of
claim 1 of the '243 patent.  Accordingly, the court need not

17

address Paiho's second motion for summary judgment, which seeks the same relief on different grounds.

II.   <u>Velcro's Motion to Strike Paiho's Summary Judgment Replies</u>

Velcro has moved to strike, <u>inter alia</u>, portions of Paiho's reply to Velcro's objection to the first motion for summary judgment on the ground that it sets forth arguments that were omitted from Paiho's moving papers.  Specifically, Velcro complains that the reply improperly includes (1) "an entirely new and detailed claim construction," (2) "arguments as to why the double hooks do not literally meet the opposite direction claims," and (3) arguments that Paiho's fasteners do not infringe under the doctrine of equivalents.  Mem. Supp. Mot. to Strike at 7-8.  In the alternative, Velcro seeks leave to file a sur-reply "in order to have a fair opportunity to respond."  <u>Id.</u> at 9.

Velcro's motion to strike is based on an exceedingly narrow view of both Paiho's summary judgment motion and the proper purpose of a reply memorandum.  In this court, a "reply is restricted to rebuttal of legal and factual issues raised in the objection or opposition memorandum."  L.R. 7.1(e)(1).  This rule, however, has generally been applied to prevent the use of a reply to assert bases for the sought-after relief which were omitted from the moving papers, rather than to elaborate upon those bases

18

adequately raised in the moving papers.  See, e.g., <u>M & D Cycles,</u>
<u>Inc. v. Am. Honda Motor Co.</u>, 208 F. Supp. 2d 115, 122 (D.N.H.
2002) (refusing to consider contractual provision first asserted
in reply brief as basis for summary judgment); <u>Stenson v.</u>
<u>McLaughlin</u>, 2001 DNH 159, 2001 WL 1033614, at *6 (D.N.H. Aug. 24,
2001) (refusing to consider "entirely different basis" for relief
"introduce[d]" in reply).  Again, as the references to Paiho's
initial moving papers throughout the court's analysis of the
summary judgment motion suggest, <u>see</u> Part I.C, <u>supra</u>, those
materials adequately set forth the bases of the motion.  Paiho's
reply brief simply elaborates upon these arguments.

Turning to Velcro's specific complaints, Paiho's claim
construction argument as to the meaning of "adjacent" is
sufficiently set forth in its principal summary judgment brief.
The court discerns nothing "new" in the reply, which responds to
the claim construction argument Velcro set forth in its
opposition to the motion for summary judgment.  This is entirely
consistent with the purpose of a reply brief.  <u>See</u> L.R.
7.1(e)(1).  Similarly, although Paiho's argument that its double-
hook fasteners do not infringe claim 1 of the '243 patent is by
no means exhaustively treated in its opening summary judgment
brief, the brief specifically references those portions of
Rocha's declaration in support of the motion, Mem. Supp. First

19

Mot. Part. Summ. J. at [3], which explain why the double-hook
fasteners do not infringe.  First Rocha Decl. ¶ 7.  Velcro
therefore cannot claim to have been "sandbagged" by this
argument, which Paiho further explains with four additional
sentences in its reply.  Finally, as noted <u>supra</u>, Paiho's opening
summary judgment brief invoked, if not by name, the specific
exclusion principle and prosecution history estoppel as the
reasons why its fasteners do not infringe the relevant claims
under the doctrine of equivalents.  Mem. Supp. First Mot. Part.
Summ. J. at [6].  These are the same arguments that appear in
Paiho's reply, contrary to Velcro's characterization.  Because
Paiho's reply brief does not, in fact, make new arguments that
were not raised in its opening summary judgment brief, Velcro's
motion to strike the reply is denied in its entirety.

Velcro's motion for leave to file a sur-reply is also
denied, since the only "extraordinary circumstances" Velcro cites
as to why leave should be granted are premised on its cramped
view of Paiho's moving papers.  <u>Cf.</u> L.R. 7.1(e)(3).  Again,
because the arguments which Velcro characterizes as new to the
reply were sufficiently raised in Paiho's opening brief and
supporting materials, Velcro had an adequate opportunity to
respond to them in its opposition.  Insofar as Velcro seeks to
strike Paiho's reply on the second motion for partial summary

judgment, or to file a sur-reply to it, that part of the motion is denied as moot, since the court did not reach the merits of the second motion for partial summary judgment.

Conclusion

For the foregoing reasons, in addition to those set forth in the court's previous order on the subject (document no. 126), Paiho's first motion for partial summary judgment (document no. 60) is GRANTED.  Paiho's second motion for partial summary judgment (document no. 63) is DENIED as moot.  Velcro's motion to strike Paiho's replies on the motions for partial summary judgment or to file a sur-reply (document no. 72) is DENIED as to the reply on the first motion for partial summary judgment and DENIED as moot as to the reply on the second motion for partial summary judgment.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 13, 2005

cc:  John L. DuPre, Esquire
     Colin C. Durham, Esquire
     Benjamin D. Enerson, Esquire
     Edward A. Haffer, Esquire
     Gregory A. Madera, Esquire

N. Scott Pierce, Esquire
Arnold Rosenblatt, Esquire
Mark C. Rouvalis, Esquire
Craig R. Smith, Esquire
Jeremy T. Walker, Esquire
Brian T. Moriarty, Esquire
David A. Simons, Esquire